

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00019-CV

JEFFERY A. BELL AND WANDA E. BELL          APPELLANTS

V.

EXPRESS ENERGY SERVICES OPERATING, LP AND RICHARD J. WIGGINS          APPELLEES

----------

**AND**

### NO. 02-11-00020-CV

JEFFERY A. BELL AND WANDA E. BELL          APPELLANTS

V.

QUICKSILVER RESOURCES INC., QUICKSILVER GAS SERVICES, L.P., QUICKSILVER GAS SERVICES, GP, LLC, QUICKSILVER GAS SERVICES OPERATING, LLC AND QUICKSILVER GAS SERVICES OPERATING GP, LLC          APPELLEES

----------

**AND**

**NO. 02-11-00031-CV**


JEFFERY A. BELL AND WANDA E.                            APPELLANTS
BELL

V.

MICHAEL W. BARTON                                              APPELLEE

----------

FROM THE 271ST DISTRICT COURT OF WISE COUNTY

----------

## MEMORANDUM OPINION[1]

----------

On the court's own motion, the above causes are hereby consolidated for purposes of disposing of these related summary judgment appeals in a single opinion. Each cause shall continue to bear its respective cause number.

### I. INTRODUCTION AND BACKGROUND

Appellant Jeffery Bell was employed as a salesman for Appellee Express Energy Services Operating, LP (Express) for approximately one month in August and September 2008. Appellee Richard J. Wiggins, the district manager for Express, received complaints from several of Express's customers that they no

---

[1]*See* Tex. R. App. P. 47.4.

longer wanted Bell performing sales at their well sites. Wiggins thus met with Bell and informed him that he would no longer be employed by Express. Bell and his wife, Appellant Wanda E. Bell, then sued Express, Wiggins, and more than twenty other defendants, alleging claims for defamation, intentional infliction of emotional distress, civil conspiracy, gross negligence, and loss of consortium. The trial court granted summary judgment in favor of each defendant, and Appellants appealed. This opinion addresses the summary judgments granted in favor of Express and Wiggins; Appellees Quicksilver Resources, Inc., Quicksilver Gas Services, LP, Quicksilver Gas Services, GP, LLC, Quicksilver Gas Services Operating, LLC, and Quicksilver Gas Services Operating GP, LLC (collectively, Quicksilver); and Appellee Michael W. Barton (Barton).[2] Appellants present a single issue containing five subissues in each appeal. We affirm all three judgments.

## II. STANDARDS OF REVIEW

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's

---

[2]This court has issued two prior opinions deciding Appellants' six other appeals from the trial court's summary judgments. *See Bell v. Denbury Res., Inc.*, Nos. 02-11-00007-CV, 02-11-00017-CV, 02-11-00018-CV, 2012 WL 1739913 (Tex. App.—Fort Worth May 17, 2012, no pet. h.) (mem. op.) (hereinafter, *Denbury*); *Bell v. Bennett*, Nos. 02-10-00481-CV, 02-11-00057-CV, 02-11-00063-CV, 2012 WL 858603 (Tex. App.—Fort Worth Mar. 15, 2012, no pet.) (mem. op.) (hereinafter, *Bennett*).

3

claim or defense. Tex. R. Civ. P. 166a(i). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* Tex. R. Civ. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

The trial court granted summary judgment for Appellees on their no-evidence and traditional motions for summary judgment without noting whether it was granting the no-evidence motion or the traditional motion. We therefore first analyze the propriety of the summary judgments under the no-evidence standard. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004) (explaining that when a party moves for summary judgment under both rules 166a(c) and 166a(i), we should review the no-evidence motion first).

### III. DEFAMATION

In the first subissue in each appeal, Appellants argue that the trial court erred by granting summary judgment for Appellees on Appellants' claims for defamation. To maintain a defamation cause of action, the plaintiff must prove that the defendant (1) published a statement, (2) that was defamatory concerning the plaintiff, and (3) while acting with negligence, if the plaintiff was a private individual, regarding the truth of the statement. *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998), *cert. denied*, 526 U.S. 1051 (1999).

## A.     Quicksilver

Quicksilver argued in its motion for no-evidence summary judgment that Appellants had no evidence that Quicksilver had made a defamatory statement. Responding to that ground on appeal, Appellants argue that "Quicksilver company men had called in to Express and complained about Bell and instructed Express not to send Bell back out to their jobsites, for reasons they 'didn't want to get into.'"    Appellants also contend that Quicksilver claimed "that Bell had somehow had problems or issues or had made misrepresentations or committed misconduct while working for a previous employer, Premiere, Inc. or Frank's Casing and/or that company men did not want him on their job sites."  To support these contentions, Appellants direct us to a portion of Wiggins's deposition testimony that states the following:

> Q.  Quicksilver, same question.  Who was it at Quicksilver that told you they didn't want Jeff Bell on-site?
>
> A.  I couldn't say.
>
> Q.  Why did Quicksilver not want Jeff Bell on-site?
>
> A.  The only thing I was told by one of the Quicksilver – and it was on the airport district for Quicksilver, is that they would prefer to have a different salesman, would not disclose anything outside of that.
>
> Q.  Did they tell you why they didn't want to disclose any other reasons?
>
> A.  No.
>
> Q.  Did you ask them?
>
> A.  That's a yes.

Q.  What did they say?

A.  They'd prefer not to get into it.

Q.  Was it because it was of a sensitive nature?

A.  I couldn't say.

We must decide whether the words used by the unidentified Quicksilver representative are reasonably capable of a defamatory meaning, which is a question of law.  *Musser v. Smith Protective Serv., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987); *see Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000).  A statement is defamatory if it tends to injure the person's reputation, exposing the person to public hatred, contempt, ridicule, or financial injury, or if it tends to impeach that person's honesty, integrity, or virtue.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (West 2011) (addressing libel).  "To be defamatory, a statement should be derogatory, degrading, and somewhat shocking, and contain 'element[s] of personal disgrace.'"  *Means v. ABCABCO, Inc.*, 315 S.W.3d 209, 214 (Tex. App.—Austin 2010, no pet.).  When considering whether a statement is defamatory, we construe the statement as a whole, in light of the surrounding circumstances, based on how a person of ordinary intelligence would perceive the entire statement.  *See Musser*, 723 S.W.2d at 655.

Here, Appellants have not identified any alleged defamatory statement made by a Quicksilver representative.  Wiggins's deposition testimony—that excerpt being the only evidence Appellants point to in support of their contention that Quicksilver defamed Bell—established that the Quicksilver representative

6

did not say why Quicksilver did not want Bell on their job-site. Construed in light of the surrounding circumstances and based on how a person of ordinary intelligence would perceive it, the statement identified by Appellants—that Quicksilver would prefer to have a different salesman—is not defamatory as a matter of law because it is not reasonably capable of a defamatory meaning. Accordingly, we hold that the trial court did not err by granting summary judgment for Quicksilver on Appellants' defamation claim because there is no evidence that Quicksilver made a defamatory statement about Bell. *See Denbury*, 2012 WL 1739913, at *2. We overrule Appellants' first subissue in cause 02-11-00020-CV.

## B. Barton

Barton argued in the no-evidence part of his motion for summary judgment that Appellants had no evidence that Barton published a statement about Bell that was defamatory. Responding to that ground on appeal, Appellants contend that Barton

> contacted Express and verbally instructed and advised Express: 1) not to send Bell back out to his jobsite again and 2) the reason Barton stated that he did not want Bell on his jobsite was because Bell had made misrepresentations to Sam Sizemore to make sales when Bell worked as an oilfield salesman for a previous employer, Premiere, Inc.

Appellants do not cite any portion of the record in the argument section of their brief. In the factual background section of their brief, Appellants include the same factual assertion and cite to a portion of Bell's deposition testimony. The cited deposition testimony, however, does not support Appellant's assertion

7

because it establishes only that *Bell informed Barton* that Barton had said something to Wiggins about misrepresentations to Sizemore. When asked in his deposition whether Wiggins knew about the supposed misrepresentations to Sizemore before Express terminated his employment, Bell answered that he did not know. Moreover, Bell testified in the same deposition excerpt that Barton did not tell Bell about anything Barton allegedly said to Wiggins before Express terminated Bell's employment. The portion of Bell's deposition testimony upon which Appellants rely constitutes no evidence that Barton published a statement about Bell, and Appellants do not cite us to any other part of the summary judgment record to support this element of their defamation claim against Barton. *See* Tex. R. App. P. 38.1(g) (requiring the appellant's brief to contain citations to the record in support of the contentions made); *Aleman v. Ben E. Keith Co.*, 227 S.W.3d 304, 309 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("In determining whether a respondent to a no-evidence motion for summary judgment has produced sufficient evidence to raise a genuine issue of material fact, courts are not required to search the record without guidance."). Appellants have consequently failed to identify any evidence of a defamatory statement made by Barton about Bell, and we hold that the trial court did not err by granting summary judgment for Barton on Appellants' defamation claim. We overrule Appellants' first subissue in cause 02-11-00031-CV.

## C.    Express and Wiggins

Express and Wiggins asserted in the no-evidence portion of their motion for summary judgment that Appellants could present no evidence that Express or Wiggins published a defamatory statement about Bell.  Responding to this point on appeal, Appellants argue that Express's customers made defamatory statements about Bell and that "Express published all of these defamatory statements . . . by stating these false complaints in Jeff Bell's termination letter that was placed in Bell's personnel file with Express."  To avoid summary judgment, however, Appellants were required to produce evidence that Express or Wiggins published the termination letter to a third party, and Appellants have not done so.  *See Rodriguez v. NBC Bank*, 5 S.W.3d 756, 766 (Tex. App.—San Antonio 1999, no pet.) (affirming summary judgment on libel claim because there was no evidence that the employee's notes, which recited what another person told the employee, were ever published to a third party).  It is not enough for Appellants that Wiggins informed Bell of what others had allegedly said to Wiggins or that Wiggins and Express recorded the statements of others in the termination notice without further publishing the statements to third parties.  *See id.*; *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377, 380 (Tex. App.— Texarkana 1989, no writ).  Appellants do not direct us to any summary judgment evidence that Express or Wiggins communicated the alleged defamatory statements to any third parties.  We thus hold that the trial court did not err by granting Express and Wiggins's motion for summary judgment on Appellants'

9

defamation claim, and we overrule Appellants' first subissue in cause 02-11-00019-CV.

### IV. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In the second subissue in each appeal, Appellants argue that the trial court erred by granting summary judgment on their claims for intentional infliction of emotional distress (IIED). IIED is a gap-filler tort that has no application when the conduct at issue invades some other legally protected interest. *See Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (stating that "[w]here the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available" and citing with approval three defamation cases in which IIED was not available as an independent claim). Appellants' IIED claims must fail because they are based on the same conduct as Appellants' defamation claims against Appellees. *See id*.

Appellants attempt to bypass this fatal deficiency by arguing that an IIED claim is permitted "when an employee is wrongfully terminated by an employer who is engaged in conduct 'bordering on serious criminal acts,'" and they contend that Appellees were engaged in an illegal kickback scheme. However, a review of the cases Appellants cite to support this alleged "exception" reveals that the factual circumstances in those cases are entirely distinct from the facts of this case. *See Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816–18 & n.24 (Tex. 2005); *Morgan v. Anthony*, 27 S.W.3d 928, 930–31 (Tex. 2000); *GTE Sw. v. Bruce*, 998 S.W.2d 605, 613–14, 617 (Tex. 1999). Moreover, Appellants have

10

not sued Express for wrongful termination, and we fail to see how evidence of an alleged kickback scheme somehow alters the fact that the gravamen of Appellants' IIED claims are the defamation claims. Evidence of an alleged kickback scheme has no relevance whatsoever to any element of Appellants' IIED claims or defamation claims, and Appellants' cited cases do not support their argument. *See Denbury*, 2012 WL 1739913, at *4; *Bennett*, 2012 WL 858603, at *12. We hold that the trial court did not err by granting summary judgment for Appellees on Appellants' IIED claims, and we overrule Appellants' second subissue in each appeal.

## V. CIVIL CONSPIRACY

In the third subissue in each appeal, Appellants argue that the trial court erred by granting summary judgment for Appellees on Appellants' claims for civil conspiracy. Civil conspiracy is a derivative claim because a defendant's liability depends upon its participation in some underlying tort for which the plaintiff seeks to hold the defendant liable. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Appellants pleaded that Appellees conspired to defame and slander Bell. Because the trial court properly granted summary judgment on each of Appellants' defamation claims, Appellees cannot be liable for the derivative tort of civil conspiracy with respect to those claims. *See id.* Appellants additionally contend that Appellees conspired to get Bell fired because he would not participate in an ongoing kickback scheme, but Appellants did not plead the kickback scheme as the basis of any type of independent tort or cause of action

11

that would support their derivative claims for civil conspiracy. *See Denbury*, 2012 WL 1739913, at *5; *Bennett*, 2012 WL 858603, at *13. Accordingly, we overrule Appellants' third subissue in each appeal.

## VI. GROSS NEGLIGENCE

In the fourth subissue in each appeal, Appellants argue that the trial court erred by granting summary judgment for Appellees on Appellants' claims for gross negligence. Appellants' gross negligence cause of action is premised, however, on their defamation, IIED, and civil conspiracy claims, and we have affirmed the trial court's grant of summary judgment as to each of those causes of action against each Appellee. Thus, there is no evidence or "underlying basis" upon which Appellants rely to support their gross negligence claims. *See Denbury*, 2012 WL 1739913, at *5; *Bennett*, 2012 WL 858603, at *14. Accordingly, the trial court did not err by granting summary judgment on Appellants' claims for gross negligence. We overrule Appellants' fourth subissue in each appeal.

## VII. LOSS OF CONSORTIUM

In the fifth subissue in each appeal, Appellants argue that the trial court erred by granting summary judgment for Appellees on Wanda's claims for loss of consortium. Wanda's claims for loss of consortium are derivative of Bell's claims against Appellees. *See Motor Express, Inc. v. Rodriguez*, 925 S.W.2d 638, 640 (Tex. 1996). Because summary judgment was proper for Appellees on all of Appellants' pleaded causes of action, Wanda's derivative loss of consortium

12

claims likewise fail.  *See id.*; *Denbury*, 2012 WL 1739913, at *5; *Bennett*, 2012 WL 858603, at *14.  We thus overrule Appellants' fifth subissue in each appeal.

## VIII. CONCLUSION

Having overruled all of Appellants' subissues in each appeal, we overrule Appellants' overarching issue in each appeal and affirm the trial court's judgments.

PER CURIAM

PANEL:  GARDNER, WALKER, and MEIER, JJ.

DELIVERED:  June 7, 2012