

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-13-00173-CV

TIM HOTCHKIN                                                                    APPELLANT

V.

GLEN BUCY                                                                        APPELLEE

----------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 153-260270-12

----------

## MEMORANDUM OPINION[1]

----------

Appellant Tim Hotchkin appeals the trial court's order dismissing his claims

of defamation against appellee Glen Bucy.  We affirm.

### Background Facts

In the 2012 Republican primary election, Hotchkin and Bucy were both

candidates for the position of Constable of Precinct Six in Tarrant County.

---

[1]*See* Tex. R. App. P. 47.4.

During his campaign, Bucy distributed flyers (known as "pushcards") comparing his background and qualifications to those of Hotchkin and a third candidate. The pushcards stated that Hotchkin had no political voting record before 2010, that he was terminated from his job as a police officer in 1982, and that he was a "Private Security Officer," all of which Hotchkin alleged were false or misleading statements. The flyer noted Bucy's military experience and educational accomplishments, but did not note Hotchkin's. Hotchkin also complained that the flyer included a "misleading and deceptive statistic" regarding his "Police Training Hours."

Hotchkin sued Bucy for defamation.[2] Bucy filed a motion to dismiss, claiming that the flyers constituted a protected exercise of free speech under the Citizens Participation Act (the TCPA). *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.003 (West Supp. 2014). Bucy also argued that the complained-of statements were substantially true.

Hotchkin responded, arguing that the statements were indeed false and that the TCPA was unconstitutional because it violated the Open Courts clause of the Texas constitution. *See* Tex. Const. art. I, § 13. Hotchkin also moved to

---

[2]Hotchkin also sued an unidentified supporter of Bucy (named as John Doe in the petition) for defamation for allegedly false statements posted to Facebook under the name "Tom Smith." Hotchkin sued both Bucy and Doe for civil conspiracy. Hotchkin later nonsuited Doe, and he is not a party to this appeal. Hotchkin also does not appeal the trial court's dismissal of his civil conspiracy cause of action.

2

dismiss Bucy's motion to dismiss under the TCPA, arguing that Bucy's motion "impacted [Hotchkin's] right to petition."

The trial court granted Bucy's motion to dismiss and awarded him attorney's fees.[3]   Hotchkin filed a motion for reconsideration.   The trial court denied the motion, and Hotchkin filed this appeal.

**The TCPA**

The stated purpose of the TCPA is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law, and at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury."  Tex. Civ. Prac. & Rem. Code Ann. § 27.002 (West Supp. 2014).  To promote these purposes, the TCPA provides a means for expedited dismissal of unmeritorious suits that are "based on, relate[d] to, or [are] in response to a party's exercise of the right of free speech, right to petition, or right of association."   *Id.* § 27.003(a).   The statute is to be "construed liberally to effectuate its purpose and intent fully." *Id.* § 27.011(b) (West Supp. 2014).

To prevail on a motion to dismiss, the movant must show by a preponderance of the evidence that the action "is based on, relates to, or is in response to the party's exercise" of free speech.  *Id.* § 27.005(b)(1) (West Supp. 2014).   Exercise of free speech is defined as a "communication made in

_____

[3]The trial court later amended the order regarding the amount of attorney's fees.

3

connection with a matter of public concern." *Id.* § 27.001(3). A "matter of public concern" includes issues related to health or safety, community well-being, the government, and public officials or public figures. *Id.* § 27.001(7). If the movant satisfies this burden, then the trial court must dismiss the action unless the party who brought the action "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c).

**Discussion**

**I. Application of the TCPA**

In his first issue and in part of his second issue, Hotchkin argues that the trial court erred by dismissing his case under the TCPA because the TCPA does not apply to his claims. Hotchkin seems to acknowledge that while he was running for election, the alleged defamatory statements were made in connection "with a matter of public concern." *See Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 733–34 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (holding that communications on a political campaign website were made in connection with a matter of public concern). But he argues that Bucy "published defamatory statements continuously throughout the proceedings," long after Hotchkin had lost the election and any public interest argument could be made and after Bucy "had been given evidence strongly suggesting that his statements were in error." Thus, he claims, Bucy's acts constitute a continuing tort.

A continuing tort arises when the wrongful conduct is repeated over a period of time. *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson*

4

*Improvement Corp.*, 53 S.W.3d 799, 812 (Tex. App.—Austin 2001, pet. denied). In such a situation, each act creates a separate cause of action, and the cause does not accrue, for purposes of limitations, until the misconduct ends. *Dickson Constr., Inc. v. Fid. & Deposit Co.*, 960 S.W.2d 845, 851 (Tex. App.—Texarkana 1997, no pet.). The continuing tort doctrine is an exception to the tolling of limitations, and it is not applicable here. *See Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 588 (Tex. App.—Austin 2007, pet. denied) ("Texas Disposal has not offered any authority, nor have we found any, that broadens the continuing tort doctrine to include actions based on defamation, tortious interference, or tortious acts that are intermittent and irregular in nature. Rather, our research has revealed only contrary authority.") (citing *Dickson*, 960 S.W.2d at 851–52).

Further, there is no evidence that Bucy "continuously" republished or reaffirmed the complained-of statements; Hotchkin only points to two sources of defamatory statements. *See Dickson*, 960 S.W.2d at 851 ("Engaging in wrongful conduct that causes injury and then refusing to modify, reverse, or cease that conduct for some period of time thereafter does not constitute a continuing tort."). In his original petition, the only source of defamation Hotchkin notes is the pushcard. In his response to Bucy's motion to dismiss, the only other source he references is a press release that he states was published on Bucy's Facebook page and on the Southwest Republican Club's Facebook page approximately

5

two months after the pushcards were distributed. In the press release, Bucy states,

> I did in[]fact distribute a comparative mailer before the primary election, however, all information pertaining to that mailer derived directly from the appropriate sources which include: Voting history provided by Tarrant County Elections, Hours of Police Training provided by [the Texas Commission on Law Enforcement Officers Standards and Education (TCLEOSE)], and Employment history directly from the Constable that fired Mr. Hotchkin.

The pushcards and the press release were two separate instances of conduct. *See Shelby v. City of El Paso*, No. EP-12-CV-00200-DCG, 2013 WL 1385578, at *4 (W.D. Tex. Apr. 3, 2013) ("The [continuing tort] doctrine does not apply merely because the misinformation has not been corrected. Instead, Plaintiff must show that the City continued to input false information. Plaintiff has failed to do so and so this Court finds that the continuing tort doctrine does not apply."). We therefore do not find merit in his argument that Bucy's conduct continued beyond the exercise of free speech and therefore removed Hotchkin's cause of action from the purview of the TCPA. We overrule Hotchkin's first issue and that part of his second issue complaining of the application of the TCPA.

## II. Hotchkin's objections to Bucy's evidence

In part of his second issue, Hotchkin argues that the trial court erred by denying his objections to Bucy's evidence attached to his motion to dismiss. Hotchkin's brief does not include any argument or citation to relevant authority on this issue or even point us to where in the record it shows that he objected and the trial court ruled on his objections. *See Weaver v. Sw. Nat'l Bank*, 813 S.W.2d

6

481, 482 (Tex. 1991) (noting that rules of appellate procedure require references to pages in the record where all relevant facts can be found); *see also* Tex. R. App. P. 38.1(f), (i). The brief thus presents nothing for review on this issue. *See* Tex. R. App. P. 38.1(i); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (stating that appellate court has discretion to waive point due to inadequate briefing); *AMX Enter., L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 525 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g). We therefore overrule this portion of Hotchkin's second issue as inadequately briefed.

### III. Prima facie case of defamation

In another part of his second issue, Hotchkin argues that the trial court erred by finding that he failed to present a prima facie case of defamation. Once the movant shows that the action is based on, related to, or in response to his exercise of free speech, the burden shifts to the plaintiff to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." Tex. Civ. Prac. & Rem. Code § 27.005(c). Hotchkin was therefore required to show that Bucy made statements that (1) were false, (2) were statements of fact, (3) were defamatory, (4) were made with malice, and (5) caused Hotchkin to sustain damages. *See Walker v. Schion*, 420 S.W.3d 454, 457 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Bentley v. Bunton*, 94 S.W.3d 561, 577, 580 (Tex. 2002)).

7

Hotchkin complains of six statements in the pushcards. First, he complains that Bucy said he was "terminated" and "fired" as a police officer. Courts have consistently held that stating that someone was terminated or fired from his position, without more, does not rise to actionable defamation. *See Ferguson v. Hilton Hotels Corp.*, No. CIV.A. H-09-4114, 2011 WL 1485680, at \*7 (S.D. Tex. Apr. 19, 2011) ("Any statements that Hilton made to the EEOC about Ferguson being fired were not capable of defamatory meaning because a statement that an employee was fired based on work performance is nonspecific and not reasonably capable of defamatory meaning."); *Means v. ABCABCO, Inc.*, 315 S.W.3d 209, 215 (Tex. App.—Austin 2010, no pet.) ("Although Austin Cab finds Kassa's statement insulting and offensive, the statement lacks the element of disgrace or wrongdoing necessary for slander. Kassa's agent did nothing more than accuse Austin Cab of doing that which it had a legal right to do; thus, Kassa's statement is not defamatory."); *Henriquez v. Cemex Mgmt., Inc.*, 177 S.W.3d 241, 252 (Tex. App.—Houston [1st Dist.], pet. denied) ("[T]hese statements did not contain specific reasons as to why Henriquez was being fired. Thus, they cannot be considered defamatory as a matter of law."); *Einhorn v. LaChance*, 823 S.W.2d 405, 411 (Tex. App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.) ("Wright complains that the statement that he was fired for reasons relating 'solely to work performance' was defamatory. Because the statement complained of is nonspecific, [it] is not capable of a defamatory meaning."). Hotchkin aserts that he was honorably discharged from his employment. He

8

appears to argue that Bucy's statement that he was terminated implies "pending or final disciplinary actions or a document performance problem." Bucy, however, did not affirmatively make any such statements.

Second, Hotchkin complains of Bucy's statement that Hotchkin did not vote before the 2012 election. There is no evidence that this statement was false or that it was made with malice. Bucy attached to his motion to dismiss the disc he received from Tarrant County Election Office, and he stated in an attached affidavit that push card "accurately reflects the information which I obtained." Hotchkin made no argument regarding this statement in his response or on appeal.

Third, Hotchkin complains that Bucy said that Hotchkin was a "Private Security Officer" when he is a licensed Private Investigator and a licensed Peace Officer. A statement is defamatory if the words tend to injure the plaintiff's reputation, exposing him to public hatred, contempt, ridicule, or financial injury, or if it tends to impeach the person's honesty, integrity, or virtue. Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (West 2011). "To qualify as defamatory, a statement should be derogatory, degrading, somewhat shocking, and contain elements of disgrace. But a communication that is merely unflattering, abusive, annoying, irksome, or embarrassing, or that only hurts the plaintiff's feelings, is not actionable." *Farias v. Garza*, 426 S.W.3d 808, 816 (Tex. App.—San Antonio 2014, pet. filed) (citing *Means*, 315 S.W.3d at 214)). Referring to someone as a Private Security Officer does not expose him to hatred, contempt or ridicule; does

9

not impeach his honesty, integrity, or virtue; nor is it derogatory, degrading, shocking, or disgraceful.

Hotchkin claims that he has been exposed to financial injury because "this particular lie hurts [his] ability to obtain employment." He claims the investigation industry pays more for better credentialed officers, and he now suffers "an unend[ing] need to prove [his] credentials." However, to be defamatory per se, the defamatory nature of the challenged statement must be apparent on its face without reference to extrinsic facts or "innuendo." *Moore v. Waldrop*, 166 S.W.3d 380, 386 (Tex. App.—Waco 2005, no pet.) (noting that "the very definition of 'per se,' 'in and of itself,' precludes the use of innuendo"). "If the court must resort to innuendo or extrinsic evidence to determine whether a statement is defamatory, then it is defamation *per quod* and requires proof of injury and damages." *KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 691 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). It is not apparent on the face of the statement that Hotchkin is a Private Security Officer that it is defamatory. It is only when we look to Hotchkin's claim that his field of employment pays less for Private Security Officers than Private Investigators and Peace Officers that we can determine whether the statement is defamatory. Needing to rely on such extrinsic evidence demonstrates that this statement is not defamation per se, but defamation per quod, if it is any type of defamation at all. Hotchkin did not sue for defamation per quod, nor has he provided any evidence of damages that he has sustained by his need to "prove [his] credentials" to possible employers.

10

Fourth and fifth, Hotchkin complains that Bucy's pushcards did not include his military experience or his higher education. These are not statements of fact; indeed, they are not statements at all. Without a statement, there is nothing to objectively verify. *See Bentley*, 94 S.W.3d at 561–62 (considering whether a fact is objectively verifiable in determining whether statement is actionable). Silence cannot therefore be defamation as a matter of law.

Lastly, Hotchkin complains that Bucy's use of "Total Police Training Hours" is "a misleading and deceptive statistic," an "undefined term," and an "invented statistic." There is no evidence that this statistic was false or made with malicious intent. Bucy's motion to dismiss contained a printout that he testified that he received from TCLEOSE showing that Hotchkin had 507 "Course Hours" and 507 "Total Hours." Hotchkin's own evidence, a printout of a public record request of Hotchkin's law enforcement training and education attached to his response to Bucy's motion to dismiss, provides the exact same number of 507 "Total Training Hours." On appeal, Hotchkin makes no argument as to why this number is false, misleading, inaccurate, or deceptive.

Hotchkin was thus unable to establish a prima facie case of defamation for any of the complained-of statements. And because he could not meet this statutory burden, the trial court was required under the TCPA to dismiss his case. Tex. Civ. Prac. & Rem. Code § 27.005(b), (c). We therefore overrule this portion of his second issue.

11

## IV. Hotchkin's motion to dismiss

In the last portion of his second issue, Hotchkin argues that the trial court erred by denying his motion to dismiss.[4]  In his response to Bucy's motion to dismiss, Hotchkin stated, "[Bucy] filed his Motion to Dismiss to stop [Hotchkin's] suit.  This action by [Bucy] meets all the requirements of the [TCPA].  [Hotchkin] hereby requests that the Court dismiss the motion and award fees as appropriate."

Assuming that filing a motion to dismiss is a procedurally proper manner to attack another motion to dismiss,[5] as explained above, Bucy established his claim that Hotchkin's case should be dismissed by providing clear and specific evidence that the statements in the pushcards were not defamatory.  *See* Tex. Civ. Prac. & Rem. Code § 27.005(c).  The trial court therefore did not err by denying Hotchkin's motion to dismiss.  *See id.* (stating that a court "may not dismiss a legal action under this section" if the nonmovant establishes a prima facie case for his claim).  We overrule the remainder of Hotchkin's second issue.

---

[4]Although Hotchkin states that the trial court denied his motion to dismiss, he also claims that the trial court "refused to hear or entertain such a motion," and he requests that this court remand the case to the trial court for a hearing on his motion.  The record clearly shows that the trial court held a hearing on the motion on October 31, 2012.

[5]The TCPA allows for the dismissal of any legal action based on, related to, or in response to a party's exercise of the right to petition, which includes "a communication in . . . a judicial proceeding."  Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001(4), .003(a) (West Supp. 2014).  It defines "legal action" as a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief.  *Id.* § 27.001(6).

## V. Award of fees

In his third issue, Hotchkin argues that the trial court erred by granting Bucy's request for attorney's fees. When a trial court grants a motion to dismiss under the TCPA, it is required to award "court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require." *Id.* § 27.009 (West Supp. 2014). Thus, the trial court was required to award Bucy his costs and fees. Hotchkin claims, however, that Bucy perjured himself in his affidavit that he attached to his motion to dismiss, thus making any award of fees inequitable.

The reasonableness and necessity of attorney's fees are generally issues for the factfinder. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). "Matters of equity are addressed to the trial court's discretion. So is the responsibility of just decisions." *Id.* (internal citations omitted). A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620.

Hotchkin complains first that Bucy "claims that he obtained [Hotchkin's] work records through a Freedom of Information Act [request] submitted to

13

TCLEOSE." Bucy testified in his affidavit only that he got the TCLEOSE records "by requesting it from the public records of . . . TCLEOSE." Hotchkin does not complain about the veracity of the information in the records, and as discussed above, he provided the exact same information in his own evidence.

Hotchkin also complains that Bucy lied when he said he had taken the title "Private Security Officer" from Hotchkin's own website. Regardless of whether the phrase had ever appeared on Hotchkin's website, we have already held that it is not defamation per se.

Neither of the two complained-of statements were relevant to the trial court's findings that Hotchkin failed to establish a prima facie case of defamation. The trial court therefore did not abuse its discretion by awarding Bucy the mandatory costs and fees. We overrule Hotchkin's third issue.

## VI. Hotchkin's motion to reconsider

In his fourth issue, Hotchkin argues that the trial court erred by denying his motion to reconsider. The motion does not appear in the record before us. Hotchkin's brief includes the motion as an attachment and states that the record would be supplemented with the motion. The record has not been supplemented, and we cannot consider attachments not included in the record. *See Bencon Mgmt. & Gen. Contracting, Inc. v. Boyer, Inc.*, 178 S.W.3d 198, 210 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("With limited exceptions . . . , an appellate court may not consider matters outside the appellate record. The attachment of documents as exhibits or appendices to briefs is not formal

14

inclusion in the record on appeal and, therefore, the documents cannot be considered.") (citing *Nguyen v. Intertex, Inc.*, 93 S.W.3d 288, 293 (Tex. App.—Houston [14th Dist.] 2002, no pet.)).  We have already held that the trial court did not err by dismissing Hotchkin's claims against Bucy under the TCPA.  We therefore overrule Hotchkin's fourth issue.

## Conclusion

Having overruled Hotchkin's issues, we affirm the trial court's judgment.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and GABRIEL, JJ.

DELIVERED:  December 18, 2014